**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)

**GENOVA BURNS LLC**
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone: (973) 467-2700
*Counsel for Edwin H. Stier, Wind Down Trustee*
**DANIEL M. STOLZ, ESQ.**

In Re:

**MLS BERKOWITZ INVESTMENTS LLC,**

            Debtor.

---

**EDWIN H. STIER, Wind-Down Trustee,**

            Plaintiff,

v.

**SETH BERKOWITZ, MARK BERKOWITZ, LOIS BERKOWITZ, ALLIED SALT LLC, BMW BANK a/k/a BMW FINANCIAL SERVICES, ARION FUND MANAGEMENT LLC, BOROUGH OF SADDLE RIVER, BJC MIKVAH, INC., MOSHE WECHSLER, LEVITIN & ASSOCIATES P.C. and JOHN DOES 1-10,**

            Defendants.

Chapter 11

Hon. Christine M. Gravelle

Case No.: 23-15334(CMG)

Hearing Date:

Adv. Pro. No.:

## <u>COMPLAINT</u>

Edwin H. Stier, Esq. ("Trustee"), Wind Down Trustee pursuant to a confirmed Chapter 11

Plan in the within bankruptcy case ("Trustee" or "Plaintiff"), by and through his attorneys, Genova

Burns LLC, by way of complaint against the Defendants, Seth Berkowitz ("Seth"), Mark

Berkowitz ("Mark"), Lois Berkowitz ("Lois"), Allied Salt LLC ("Allied"), BMW Bank a/k/a

BMW Financial Services ("BMW"), Arion Fund Management LLC ("Arion"), the Borough of

Saddle River ("Saddle River"), BJC Mikvah, Inc. ("BJC Mikvah"), Moshe Wechsler

("Wechsler"), Levitin & Associates P.C. ("Levitin") and John Does 1-10, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      On June 20, 2023, a Chapter 7 Involuntary Petition was filed against MLS

Berkowitz Investments LLC ("MLS").

2.      Pursuant to a Stipulated Order dated August 30, 2023, the Involuntary Chapter 7

case was converted to a Voluntary Chapter 11 case, with the date of the Order for Relief of June

20, 2023.

3.      By Order dated September 7, 2023, a Chapter 11 Plan was confirmed by the Court.

Pursuant to the Plan, Edwin H. Stier, Esq. was appointed as Wind-Down Trustee. Pursuant to the

Plan and Order of Confirmation, the Trustee was vested with all powers of a Trustee duly

appointed pursuant to the provisions of the Bankruptcy Code.

4.      Pursuant to 11 U.S.C. §544, the Trustee stands in the shoes of all creditors and is

entitled to the rights of a lien creditor and as a successor to certain purchasers.

5.      Section 544 establishes certain powers of a trustee.  Among those powers, the

trustee may avoid and set aside any transfers by MLS that are voidable, including preferential and

fraudulent transfers.  The Trustee may also bring claims under applicable State Law.  Pursuant to

11 U.S.C. §550(a), the trustee may seek recovery from the initial transferee of such transfer, the

entity for whose benefit such transfer was made, and any other immediate transferee of such initial

transferee.

2

6.      Pursuant to 11 U.S.C. §547, the Trustee is entitled to recover transfers to or for the benefit of a creditor, for on account of an antecedent debt, made while the Debtor was insolvent.

7.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

8.      This adversary proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C. §157(b)(2).  Plaintiff consents to the entry of final orders and judgments by this Court.

9.      Venue of the Debtor's Chapter 11 case and this adversary proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

10.     Seth Berkowitz ("Seth") is an individual residing at 60 Shaw Road, Woodcliff Lake, New Jersey 07677 (the "Woodcliff Lake Residence").  Upon information and belief, on or about March 20, 2022, at a time that the Debtor was insolvent, Seth purchased a property located at 20 Cameron Road, Saddle River, New Jersey (the "Saddle River Property") for the sum of $1.6 million.  On or about July 12, 2023, after the Order for Relief was entered in this Case, Seth sold the Saddle River Property for $1.9 million.  None of the sale of the proceeds were deposited into the Debtor's account.

11.     Mark and Lois Berkowitz ("Mark and Lois") are the parents of Seth and reside at 17 Country Club Lane, Marlboro, New Jersey 07746.

12.     MLS Berkowitz Investments LLC is a New Jersey Limited Liability Company, with its principal business address at 17 Country Club Lane, Marlboro, New Jersey 07746.

13.     MLS was created as an investment vehicle for the Berkowitz family.  Seth and

3

Mark are the sole members/managers of MLS, and they each own 50% of the company.  MLS

stands for "Mark, Lois and Seth".

14.    Allied Salt LLC is a New Jersey Limited Liability Company, owned 50% by Seth

and 50% by Mark.

15.    Arc Swimming Pool LLC is a New Jersey Limited Liability Company, located at

98 Colonial Road, Midland Park, New Jersey which, upon information and belief, provided pool

services to the Saddle River Property, or the Woodcliff Lake Residence.

16.    Public Service Electric & Gas (PSE&G) is a New Jersey utility company, which

upon information and belief, provided utility service to the Saddle River Property, or the Woodcliff

Lake Residence.

17.    Rockland Electric is a New Jersey utility company which, upon information and

belief, provided electric services to the Saddle River Property, or the Woodcliff Lake Residence.

18.    BMW Bank a/k/a BMW Financial Services, upon information and belief, is the

lending arm of BMW Motor Corporation and financed a vehicle utilized by Seth.

19.    Arion Fund Management, LLC is a New York based private lending firm with

offices located at 135 West 41st Street, New York, New York 10036, which held the mortgage on

the Saddle River Property, and/or the Woodcliff Lake Residence.

20.    Andrew J. Gangi is a real estate agent and owner of the Gangi Group, located at

123 Tice Blvd., Woodcliff Lake, New Jersey.  Upon information and belief, Andrew Gangi

provided services to Seth personally.

21.    Upon information and belief, J.H. Furgeson & Associates LLC is a provider of

insurance, maintaining its primary offices 125 S. Wacker Drive, Suite 2300, Chicago, Illinois,

which provided insurance for the Saddle River Property owned by Seth.

22.     The Borough of Saddle River is a borough in Bergen County, New Jersey.

23.     1st Moving Corporation is a New Jersey corporation located at 1743 Route 9 N., Howell, New Jersey 07731.  Upon information and belief, 1st Moving Corporation performed moving services for Seth individually.

24.     BJC Mikvah Inc., upon information and belief, is a religious organization associated with Defendant Moshe Wechsler, located at 777 Chestnut Ridge Road, Chestnut Ridge, New York 10977.

25.     Moshe Wechsler, upon information and belief, is a friend of Seth Berkowitz and maintains offices at 777 Chestnut Ridge Road, Chestnut Ridge, New York 10977.

26.     Levitin & Associates P.C. is a law firm, located at 777 Chestnut Ridge Road, Chestnut Ridge, New York 10977, and upon information and belief, associated with Defendants Moshe Wechsler and BJC Mikvah.

27.     Upon information and belief, John Does 1-10 are individuals whose identities are presently unknown, but who participated in the misconduct set forth below and/or received assets of the Debtor's estate that constitute fraudulent conveyances and preferences.

## ALLEGATIONS COMMON TO ALL COUNTS

28.     MLS, Allied Salt, Seth, Mark Berkowitz and Lois Berkowitz all utilized the accounting services of Marcum LLP for all financial services, including the preparation of tax returns.  The tax returns for MLS, Allied Salt and Seth were provided by Marcum to the Trustee's financial advisors.

29.     After reviewing the financial statements and tax returns, the Trustee's financial

advisors have concluded that MLS was insolvent, on a balance sheet basis, at least as far back as June 2022.

30.    During the year 2022, MLS engaged in a large number of purchases and sales of tin concentrate.  To finance the purchase of the tin concentrate, MLS borrowed funds from entities controlled by friends of Seth and from Allied Salt.

31.    Certain loans from Nanzo Holdings, Inc. ("Nanzo"), owned by college friends of Seth, were advanced at usurious and extraordinary interest rates, in violation of applicable law.

32.    Seth repeatedly advised the Trustee that there existed no documentation with regard to these loans with Nanzo.  Ultimately, after being served with a subpoena, Nanzo produced a convoluted joint venture and loan agreement with MLS.

33.    In litigation commenced in the United States District Court for the District of New Jersey, Trustee Stier has sought the recovery from Nanzo and its principals of all payments received from MLS.

34.    MLS, through Seth, also borrowed funds, on a short term basis, from another friend of Seth's, Moshe Wechsler.  Upon information and belief, Wechsler shares offices with defendant Arion Fund Management LLC, defendant BJC Mikvah, Inc. and defendant Levitin & Associates P.C.  Upon information and belief, Wechsler introduced MLS to Arion, BJC Mikvah and Levitin.

35.    In very early 2023, MLS, through Seth, contracted to sell approximately $49 million of tin concentrate to Gerald Metals SARL.

36.    Beginning in early 2023, Gerald delivered payments to MLS totaling approximately $49 million, for the purchase of the tin concentrate from Brazil.

37.    No tin concentrate was ever delivered to Gerald.  When the ships arrived at their

6

destinations, the containers on the ships were found to contain relatively worthless gravel dust. MLS has stipulated, in an agreement filed with and approved by this Court, that Gerald holds a claim against MLS in the approximate amount of $60 million.

38.    Despite the fact that MLS was continually insolvent from June 20, 2022 onward, Seth utilized MLS as his personal "piggy bank" and for the benefit of his family, friends and Allied Salt.

39.    During the time period when MLS was insolvent, MLS made the preferential and fraudulent conveyances detailed hereinafter in this Complaint.

## COUNT I

## CLAIMS AGAINST SETH BERKOWITZ

40.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 of the within complaint, as if set forth verbatim herein.

41.    On June 21, 2022, Seth caused MLS to issue a payment to him in the amount of $10,000.00.  On November 3, 2022, Seth caused MLS to issue a payment to him in the amount of $10,000.00. On April 27, 2023, Seth caused MLS to issue a payment to him in the amount of $15,000.00 (hereinafter, collectively, the "Direct Seth Payments").

42.    MLS received no reasonably equivalent value in exchange for the Direct Seth Payments.  Alternatively, the Direct Seth Payments were transfers to an insider of the Debtor in payment of antecedent debts during the one year prior to the Order for Relief.

43.    Pursuant to 11 U.S.C. §548, N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27, and 11 U.S.C. §547, the Direct Seth Payments are avoidable and recoverable by the Trustee.

44.    During the one year prior to the entry of the Order for Relief, Seth caused MLS to

make the following payments to third parties for his personal benefit (the "Indirect Seth Payments"):

    a.      PSE&G - $2,498.74

    b.      Rockland Electric - $1,071.75

    c.      Arion Fund Management LLC - $128,154.96

    d.      Andrew Gangi, real estate agent - $4,576.55

    e.      JH Ferg, vacant property insurance - $2,667.27

    f.      Saddle River Tax - $19,490.50

    g.      BMW Bank - $20,108.04

    h.      Arc Swimming Pool - $1,117.57

    i.      Valdimir Borovkov d/b/a 1st Moving Corporation - $5,975.00

    j.      Vitaly Obodovsky d/b/a 1st Moving Corporation - $4,500.00

45.    None of the recipients of the Indirect Seth Payments provided reasonably equivalent value to MLS in exchange for such payments.

46.    To the extent that any of the Indirect Seth Payments are determined by the Court to be in satisfaction of an antecedent debt of MLS, such payments were for the benefit of an insider of the debtor and are avoidable as preferences.

47.    Pursuant to 11 U.S.C. §548, N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27, and 11 U.S.C. §547, the Trustee is empowered to recover fraudulent conveyances and preferences for the benefit of the Debtor's estate.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment against Seth Berkowitz under the First Count of this Complaint as follows:

    a.       For compensatory damages in the amount of $225,157.38;

    b.       For interest from the date of the transfer to the date of recovery, together with counsel fees and costs; and

    c.       For such other and further relief as is just and equitable.

**COUNT II**

**CLAIMS AGAINST MARK AND LOIS BERKOWITZ
FOR PREFERENTIAL AND/OR FRAUDULENT TRANSFERS**

48.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 47 of the within complaint, as if set forth verbatim herein.

49.    MLS Berkowitz LLC reflects the names of Mark, Lois and Seth Berkowitz.

50.    Mark and Lois Berkowitz are the parents of Seth Berkowitz.

51.    Mark Berkowitz is an owner of the Debtor.  Lois Berkowitz has been reflected as an owner of the Debtor on various documents and is listed as a "signor" on the MLS Berkowitz bank account.

52.    Mark and Lois Berkowitz are "insiders" of the Debtor as defined in the Bankruptcy Code.

53.    During the one year prior to the entry of the Order for Relief in this bankruptcy case, Mark and Lois Berkowitz received direct payments from the Debtor in the amount of $203,000.00.

54.    Mark and Lois Berkowitz did not provide reasonably equivalent value to the Debtor in exchange for the aforementioned payments made to them by MLS.

55.    To the extent that it is determined that Mark and/or Lois Berkowitz held claims against MLS at the time that the aforementioned payments were made, such payments constitute

preferential payments to an insider of the Debtor.

56.     Pursuant to 11 U.S.C. §548, N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27, and 11 U.S.C. §547, the payments made to Mark and Lois Berkowitz in the one year prior to the bankruptcy filing constituted either fraudulent conveyances or avoidable preferences.

57.     The Trustee is empowered, pursuant to applicable provisions of the Bankruptcy Code and the confirmed Plan of Reorganization in this case, to recover fraudulent transfers and preferential transfers from the recipients thereof.

58.     The transfers to Defendants Mark and/or Lois Berkowitz constituted transfers of an interest in property of the Debtor.

59.     Seth Berkowitz has asserted that Mark and Lois Berkowitz were creditors at the time of each transfer.

60.     To the extent that it is determined that Mark and Lois Berkowitz were creditors of the Debtor at the time of the payments totaling $203,000.00, each transfer to Mark and/or Lois Berkowitz was to or for the benefit of a creditor within the meaning of §547(b)(1) of the Bankruptcy Code, because each transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendants Mark and/or Lois Berkowitz.

61.     To the extent that it is determined that Mark and Lois Berkowitz were creditors of the Debtor at the time of the payments totaling $203,000.00, such payments were made for, or on account of, an antecedent debt or debts owed by the Debtor before such transfers were made.

62.     The transfers were made while the Debtor was insolvent.  Plaintiff is entitled to the presumption of insolvency for each transfer made within 90 days of the Order for Relief, pursuant to §547(f) of the Bankruptcy Code, and the Debtor's business records conclusively demonstrate

that the Debtor was insolvent for the entirety of the one-year period prior to the entry of the Order for Relief.

63.     As a result of each transfer, Defendants Mark and/or Lois Berkowitz received more than such defendants would have received if (a) the Debtor's Chapter 11 case was a case under Chapter 7 of the Bankruptcy Code, (b) the transfers had not been made, and (c) Defendants received distribution on account of their debts under the provisions of the Bankruptcy Code.

64.     As evidenced by the Debtor's schedules filed in this Bankruptcy Case, and by the stipulation by the Debtor that Gerald holds a claim in the amount of $60 million, the Debtor's liabilities exceeded its assets such that the Debtor's unsecured creditors will not receive payment of their claims in full from the Debtor's bankruptcy estate.

65.     In accordance with the foregoing, the transfers to Mark and/or Lois Berkowitz are avoidable, pursuant to §547(b) of the Bankruptcy Code.

66.     To the extent that Mark and Lois Berkowitz assert that the payments received by them totaling $203,000.00 were not on account of antecedent debts, the payments constitute fraudulent conveyances, pursuant to 11 U.S.C. §548 and N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment against Mark and Lois Berkowitz, jointly and severally, under the Second Count of this Complaint, as follows:

a.      For damages in the amount of $203,000.00;

b.      For interest, counsel fees and costs; and

c.      For such other and further relief as is just and equitable.

11

## COUNT III

### CLAIMS AGAINST ARION FUND MANAGEMENT LLC AND SETH BERKOWITZ

67.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 66 of the within complaint, as if set forth verbatim herein.

68.     Upon information and belief, Arion Fund Management LLC, which shared office space with Seth Berkowitz' friend Moshe Wechsler, loaned funds to Seth Berkowitz individually, secured by a mortgage on a house owned by Seth Berkowitz in Saddle River, New Jersey.

69.     During the one year prior to the entry of the Order for Relief in this proceeding, Arion Fund Management LLC received payments from the Debtor totaling $128,154.96.

70.     Arion Fund Management LLC provided no value to the Debtor and certainly not reasonably equivalent value to the Debtor in exchange for the payments received.

71.     Pursuant to 11 U.S.C. §548 and N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27, all payments from the Debtor to Arion Fund Management LLC constituted recoverable fraudulent conveyances.

72.     To the extent that it is concluded that Arion Fund Management LLC was a creditor of the Debtor and the payments received were in satisfaction of an antecedent debt, such payments were for the benefit of an insider, and are avoidable pursuant to 11 U.S.C. §547.

73.     Pursuant to the provisions of the Bankruptcy Code and the confirmed Plan of Reorganization in this case, the Trustee is entitled to recover fraudulent and preferential transfers from the recipients thereof.

74.     The payments made to Arion Fund Management LLC were for the benefit of Seth Berkowitz, an Insider of the Debtor.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment under the Third Count of this Complaint against Arion Fund Management LLC and Seth Berkowitz, jointly and severally, as follows:

      a.      For damages in the amount of $128,154.96;

      b.      For interest, attorney's fees and costs; and

      c.      For such other and further relief as is just and equitable.

**COUNT IV**

**CLAIMS AGAINST BMW BANK a/k/a BMW FINANCIAL SERVICES AND SETH BERKOWITZ**

75.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 74 of the within complaint, as if set forth verbatim herein.

76.      Upon information and belief, during the one year prior to the entry of the Order for Relief in this proceeding, BMW Bank a/k/a BMW Financial Services received payments from the Debtor totaling $20,108.04.

77.      BMW Bank a/k/a BMW Financial Services provided no value to the Debtor and certainly not reasonably equivalent value to the Debtor in exchange for the payments received.

78.      Pursuant to 11 U.S.C. §548 and N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27, all payments to BMW Bank a/k/a BMW Financial Services constituted recoverable fraudulent conveyances.

79.      To the extent that it is concluded that BMW Bank a/k/a BMW Financial Services was a creditor of the Debtor and the payments received were in satisfaction of an antecedent debt, such payments were further benefit of an insider, and are avoidable pursuant to 11 U.S.C. §547.

80.      Pursuant to the provisions of the Bankruptcy Code and the confirmed Plan of

13

Reorganization in this case, the Trustee is entitled to recover fraudulent and preferential transfers from the recipients thereof.

81.     The payments made to BMW Bank a/k/a BMW Financial Services were for the benefit of Seth Berkowitz, an Insider of the Debtor.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment under the Fourth Count of this Complaint against BMW Bank a/k/a BMW Financial Services and Seth Berkowitz, jointly and severally as follows:

      a.     For damages in the amount of $20,108.04;

      b.     For interest, attorney's fees and costs; and

      c.     For such other and further relief as is just and equitable.

## COUNT V

### CLAIMS AGAINST BOROUGH OF SADDLE RIVER AND SETH BERKOWITZ

82.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 81 of the within complaint, as if set forth verbatim herein.

83.     Upon information and belief, during the one year prior to the entry of the Order for Relief in this proceeding, Borough of Saddle River received payments from the Debtor totaling $19,490.50.

84.     Borough of Saddle River provided no value to the Debtor and certainly not reasonably equivalent value to the Debtor in exchange for the payments received.

85.     Pursuant to 11 U.S.C. §548 and N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27, all payments to Borough of Saddle River constituted recoverable fraudulent conveyances.

86.     To the extent that it is concluded that Borough of Saddle River was a creditor of

the Debtor and the payments received were in satisfaction of an antecedent debt, such payments were further benefit of an insider, and are avoidable pursuant to 11 U.S.C. §547.

87.     Pursuant to the provisions of the Bankruptcy Code and the confirmed Plan of Reorganization in this case, the Trustee is entitled to recover fraudulent and preferential transfers from the recipients thereof.

88.     The payments made to Borough of Saddle River were for the benefit of Seth Berkowitz, an Insider of the Debtor.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment under the Fifth Count of this Complaint against Borough of Saddle River and Seth Berkowitz, jointly and severally as follows:

a.     For damages in the amount of $19,490.50;

b.     For interest, attorney's fees and costs; and

c.     For such other and further relief as is just and equitable.

## COUNT VI

## <u>CLAIMS AGAINST LEVITIN & ASSOCIATES P.C. , MOSHE WECHSLER AND SETH BERKOWITZ</u>

89.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 88 of the within complaint, as if set forth verbatim herein.

90.     As set forth previously, Levitin & Associates P.C. shares office space with defendants, Moshe Wechsler and Arion Fund Management LLC. Moshe Wechsler is a close friend of Seth Berkowitz.

91.     On April 13, 2023, within 90 days of the entry of the Order for Relief in this proceeding, the Debtor delivered to Levitin & Associates P.C. a payment in the amount of $500,000.00, identified as a "repayment of loan".

15

92.     The funds utilized to pay Levitin & Associates P.C. were funds delivered to the Debtor by Gerald Metals SAR, to be used exclusively for the purchase of tin concentrate from Brazil.

93.     The payment of $500,000.00 to Levitin & Associates P.C. constitutes a preferential transfer, pursuant to 11 U.S.C. §547 and is recoverable by the Trustee.

94.     The payment to Levitin & Associates P.C. was in repayment of an antecedent debt, and allowed Levitin & Associates P.C. to receive more than such party would have received in the event that the Debtor was liquidated under Chapter 7 and was made at the time when the Debtor was insolvent.

95.     The transfers to Defendant Levitin & Associates P.C. constituted transfers of an interest in property of the Debtors.

96.     Defendant Levitin & Associates P.C. was a creditor at the time of each transfer.

97.     Each transfer to Levitin & Associates P.C. was to or for the benefit of a creditor within the meaning of §547(b)(1) of the Bankruptcy Code, because each transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant Levitin & Associates P.C.

98.     Each transfer to Levitin & Associates P.C.  was made for, or on account of, an antecedent debt or debts owed by the Debtor before such transfers were made.

99.     Each transfer to Levitin & Associates P.C. was made while the Debtor was insolvent.  Plaintiff is entitled to a presumption of insolvency for each transfer made during the preference period.

100.    The transfers to Levitin & Associates P.C. were made while the Debtor was insolvent.  Plaintiff is entitled to the presumption of insolvency for each transfer made within 90

16

days of the Order for Relief, pursuant to §547(f) of the Bankruptcy Code, and the Debtor's business records conclusively demonstrate that the Debtor was insolvent for the entirety of the one year period prior to the entry of the Order for Relief.

101.    As a result of each transfer, Defendant Levitin & Associates P.C. received more than such defendant would have received if (a) the Debtor's Chapter 11 case was a case under Chapter 7 of the Bankruptcy Code, (b) the transfers had not been made, and (c) Defendants received distribution on account of their debts under the provisions of the Bankruptcy Code.

102.    As evidenced by the Debtor's schedules filed in this Bankruptcy Case, the stipulation by the Debtor that Gerald holds a claim in the amount of $60 million and information obtained in the Debtor's Plan and Disclosure Statement, the Debtor's liabilities exceeded its assets such that the Debtor's unsecured creditors will not receive payment of their claims in full from the Debtor's bankruptcy estate.

103.    In accordance with the foregoing, the transfers to Levitin & Associates P.C. are avoidable, pursuant to §547(b) of the Bankruptcy Code.

104.    To the extent that Levitin & Associates, P.C. asserts that the payment it received was in a capacity as agent or attorney for Moshe Wechsler, the Trustee also seeks judgment against Moshe Wechsler for recovery of the $500,000.00 preferential payment.

105.    Seth Berkowitz was aware that the funds paid to Levitin & Associates, P.C./Wechsler were to be used exclusively to purchase tin concentrate from Brazil. His use of the funds to pay Levitin & Associates, P.C./Wechsler constitutes fraud and conversion.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment under the Sixth Count of this Complaint against Levitin & Associates P.C., Moshe Wechsler and Seth Berkowitz , jointly and

severally, as follows:

      a.      For damages in the amount of $500,000.00;

      b.      For interest, attorneys' fees and costs; and

      c.      For such other and further relief as is just and equitable.

## COUNT VII

### CLAIMS AGAINST BJC MIKVAH, INC. AND MOSHE WECHSLER

106.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 105 of the within complaint, as if set forth verbatim herein.

107.    Upon information and belief, BJC Mikvah, Inc. is a religious organization, associated with Defendant Moshe Wechsler.

108.    Upon information and belief, the Debtor made the payment set forth hereinafter in this Count VII of this Complaint as an accommodation to or at the direction of Defendant Moshe Wechsler.

109.    On May 5, 2023, the Debtor made an online wire transfer to Signature Bank, which is apparently the depository for BJC Mikvah, Inc. in the amount of $25,000.00.

110.    Upon information and belief, BJC Mikvah, Inc. provided neither any value, nor reasonably equivalent value to the Debtor in exchange for the $25,000.00 payment.

111.    At the time of the $25,000.00 payment, the Debtor was insolvent and the payment was made within 90 days of the entry of the Order for Relief in this case.

112.    Based upon the foregoing, the payment to BJC Mikvah, Inc. constitutes a fraudulent conveyance, recoverable by the Trustee pursuant to 11 U.S.C. §548 and N.J.S.A. §25:2-25 and N.J.S.A. §25:2-27.

113.    Seth Berkowitz was aware that the funds used to pay BJC Mikvah, Inc, were to be utilized exclusively to purchase tin concentrate in Brazil. His use of the funds to pay BJC Mikvah constitutes fraud and conversion.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment under the Seventh Count of this Complaint against BJC Mikvah, Inc. and Moshe Wechsler, jointly and severally, as follows:

      a.      For damages in the amount of $25,000.00;

      b.      For interest, attorneys' fees and costs; and

      c.      For such other and further relief as is just and equitable.

## COUNT VIII

## CLAIMS AGAINST ALLIED SALT LLC AND SETH BERKOWITZ

114.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 113 of the within complaint, as if set forth verbatim herein.

115.    Allied Salt LLC is a New Jersey LLC owned by Seth Berkowitz and Mark Berkowitz and operated by Seth Berkowitz.

116.    Allied Salt is an "insider" as defined in 11 U.S.C. §101(31).

117.    During the one year prior to the entry of the Order for Relief in this Case, Allied Salt received net preferential payments, after the application of new value, totaling $1,233,000.00.

118.    The transfers to Defendant Allied Salt LLC constituted transfers of an interest in property of the Debtor.  Defendant Allied Salt LLC was a creditor at the time of each transfer.

119.    Each transfer to Allied Salt LLC was to or for the benefit of a creditor within the meaning of §547(b)(1) of the Bankruptcy Code, because each transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant Allied Salt LLC.

120.    Each transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor before such transfers were made.

121.    The transfers were made while the Debtor was insolvent.  Plaintiff is entitled to the presumption of insolvency for each transfer made within 90 days of the Order for Relief, pursuant to §547(f) of the Bankruptcy Code, and the Debtor's business records conclusively demonstrate that the Debtor was insolvent for the entirety of the one-year period prior to the entry of the Order for Relief.

122.    As a result of each transfer, Defendant Allied Salt LLC received more than such defendant would have received if (a) the Debtor's Chapter 11 case was a case under Chapter 7 of the Bankruptcy Code, (b) the transfers had not been made, and (c) Defendant received distribution on account of their debts under the provisions of the Bankruptcy Code.

123.    As evidenced by the Debtor's schedules filed in this Bankruptcy Case and the stipulation by the Debtor that Gerald holds a claim in the amount of $60 million, the Debtor's liabilities exceeded its assets such that the Debtor's unsecured creditors will not receive payment of their claims in full from the Debtor's bankruptcy estate.

124.    In accordance with the foregoing, the transfers to Allied Salt LLC are avoidable, pursuant to §547(b) of the Bankruptcy Code.

125.    Seth Berkowitz was aware that the funds paid to Allied Salt were to be utilized exclusively to purchase tin concentrate in Brazil. His use of the funds to repay debts to Allied Salt constitutes fraud and conversion.

**WHEREFORE,** Trustee Edwin H. Stier, Esq. requests judgment under the Eighth Count of this Complaint against Allied Salt LLC and Seth Berkowitz, jointly and severally as follows:

a.    For damages in the amount of $1,233,000.00;

b.    For interest, counsel fees and costs of suit; and

c.    For such other and further relief as is just and equitable.

## COUNT IX

### CLAIMS AGAINST SETH BERKOWITZ TO VOID RELEASES

126.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 125 of the within complaint, as if set forth verbatim herein.

127.    To induce Gerald to enter into the Memorandum of Understanding, pursuant to which Gerald agreed to convert the involuntary Chapter 7 case to a Chapter 11 reorganization and to release certain parties, Seth Berkowitz specifically represented that his personal net worth had not exceeded $1,550,000.00 during the period January 1, 2023 through September 22, 2023. Certain items were excluded from the calculation of "net worth". The Memorandum of Understanding further provided that if Seth Berkowitz' certification was determined by the Court to be materially incorrect, then the release provided in the plan in favor of Seth Berkowitz would be terminated.

128.    Based upon information in which the Trustee has received since execution of the Memorandum of Understanding, the Trustee believes that the representation by Seth Berkowitz that his net worth during the period January 1, 2023 through September 22, 2023 did not exceed $1,550,000.00 was materially false.

129.    On January 1, 2023, Seth Berkowitz owned the Saddle River property which was valued and sold at an amount of $1,900,000.00.

130.    Based upon information received by the Trustee, it is the Trustee's information and

21

belief that Seth Berkowitz' interest in Casablanca Properties, Allied Salt LLC, Inversiones Atacama Blanca SpA, Inversiones Seromin SpA, Marrakech Green LLC, 370 Creble Road LLC, and 370 Creble Road SB LLC, enhanced Seth Berkowitz' net worth well beyond the represented net worth of $1,550,000.00.

131.    Upon information and belief, Seth Berkowitz may own interest in other entities which would further enhance his net worth as of January 1, 2023 well beyond $1,550,000.00.

**WHEREFORE**, Trustee Stier demands judgment under the Ninth Count of the Complaint as follows:

    a.    Declaring the release granted to Seth Berkowitz under the Memorandum of Understanding and Plan of Reorganization to be null and void;

    b.    For counsel fees and costs of suit; and

    c.    For such relief as is just and equitable.

## COUNT X

### <u>CLAIM AGAINST JOHN DOES 1-10 AND SETH BERKOWITZ</u>

132.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 131 of the within complaint, as if set forth verbatim herein.

133.    Upon information and belief, during the one year prior to the entry of the Order for Relief in this proceeding, John Does 1-10 received payments from the Debtor.  The details of these payments are presently unknown.

134.    Upon information and belief, John Does 1-10 provided no value to the Debtor and certainly not reasonably equivalent value to the Debtor in exchange for the payments received.

135.    Upon information and belief, pursuant to 11 U.S.C. §548 and N.J.S.A. §25:2-25

and N.J.S.A. §25:2-27, all payments to John Does 1-10 constituted recoverable fraudulent conveyances.

136.    To the extent that it is concluded that John Does 1-10 were a creditors of the Debtor and the payments received were in satisfaction of an antecedent debt, such payments were further benefit of an insider, and are avoidable pursuant to 11 U.S.C. §547.

137.    Pursuant to the provisions of the Bankruptcy Code and the confirmed Plan of Reorganization in this case, the Trustee is entitled to recover fraudulent and preferential transfers from the recipients thereof.

138.    The payments made to John Doe 1-10 were for the benefit of Seth Berkowitz, an Insider of the Debtor.

**WHEREFORE**, Trustee Edwin H. Stier seeks judgment under the Tenth Count of this Complaint against John Does 1-10 and Seth Berkowitz, jointly and severally, as follows:

d.    For damages in an amount to be determined at trial;

e.    For interest, attorneys' fees and costs; and

f.    For such other and further relief as is just and equitable.


**GENOVA BURNS, LLC**
*Counsel to Edwin H. Stier, Wind Down Trustee*


*/s/   DANIEL M. STOLZ*
Date:  April 7, 2025                    **DANIEL M. STOLZ**